715 A.2d 1101

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Gary WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1997.

Decided July 22, 1998.

---

Scott B. Rudolph, John W. Packel and Helen A. Marino, for Williams.

Catherine Marshall and Joan Weiner, Philadelphia, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

NEWMAN, Justice.

In this appeal, we must decide whether the Superior Court erred when it affirmed Gary Williams' (Williams) judgment of sentence for controlled substance offenses because he did not provide the Superior Court with the complete trial court record from his case. Because the circumstances preventing timely transmission of the record are unclear, we reverse the Order of the Superior Court and remand this case to that court with instructions to remand this matter to the Court of Common Pleas for an evidentiary hearing.

### Facts and Procedural History

On April 25, 1990, police officers arrested Williams in Amtrak's 30th Street Station in Philadelphia and recovered 51.79 grams of crack cocaine from him. The Commonwealth charged him with possession of cocaine [1] and possession with intent to deliver cocaine.[2] The Defender Association of Philadelphia [3] was appointed to represent Williams and filed a motion to suppress evidence for him. After a suppression hearing before the Honorable James Fitzgerald of the Philadelphia Court of Common Pleas (trial court) on March 31, 1992, the court denied the motion to suppress. Williams waived his right to a jury trial and immediately proceeded to a

---

1. Section 780–113(a)(16) of the Controlled Substance, Drug, Device, and Cosmetic Act, Act of April, 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780–113(a)(16).

2. 35 P.S. § 780–113(a)(33).

3. Attorneys from the Defender Association of Philadelphia have represented Williams at all phases of these proceedings up to and including the appeal before this Court.

nonjury trial before Judge Fitzgerald, who convicted him of both offenses.

Williams filed post-verdict motions, which were scheduled for the same day as his sentencing hearing. On May 18, 1992, defense counsel requested a continuance of the sentencing hearing because he had not yet received the notes of testimony from the suppression hearing and trial. The court reporter transcribed the notes of testimony on May 29, 1993 and forwarded a copy to defense counsel.

What occurred after that is not clear, and the continuing controversy about what happened to those notes of testimony is at the heart of this appeal. For instance, it is unclear from the record whether the court reporter provided a copy of the notes of testimony to the trial court. Nevertheless, on November 29, 1993, the trial court denied Williams' post-verdict motions and sentenced him to thirty-nine months to ten years incarceration and a fine of $15,000.00.

On December 13, 1993, the defense filed a Notice of Appeal that contained a routine request that the court reporter "produce, certify, and file" the transcript of November 29, 1993, which was the date of the sentencing hearing. The request to produce, certify and file the transcript did not include any mention of the notes of testimony from the suppression hearing and trial on March 31, 1992.[4] The Superior Court sent the parties notification that the trial court record was due to be transmitted to the Superior Court on January 24, 1994. Nearly eleven months later, on December 20, 1994, the Superior Court had still not received the trial court record, and it notified the parties that the record had

---

4. The Appellant's brief to this Court concedes that defense counsel did not request the court reporter to produce, certify, and file the transcript from the suppression hearing and trial, and it offers the following explanation:

> As the notes of testimony for the [suppression] hearing had already been obtained and made part of the Quarter Sessions file, the Notice of Appeal contains a request only for the notes of testimony of the November 29, 1993 sentencing.

Brief for Appellant, p. 5, n. 3. However, the Commonwealth maintains that the suppression hearing and trial transcript were not in the file at that time.

not been transmitted, and ordered the Court of Common Pleas to forward the record immediately. On that same date, the Superior Court ordered defense counsel to file his brief on or before January 30, 1995.

Defense counsel filed a brief in the Superior Court on February 1, 1995,[5] and his brief specifically referred to the pages in the notes of testimony in the suppression hearing and trial transcripts, which apparently were in his possession. After that, the Commonwealth petitioned the Superior Court to suspend its briefing deadline because the Commonwealth did not have a copy of the notes of testimony from the suppression hearing and trial and those transcripts were not in the Superior Court file because the certified record was not yet transmitted. When defense counsel received the Commonwealth's Petition, he forwarded a copy of the notes of testimony to the Commonwealth, and informed the Superior Court that he had done so.

The Commonwealth filed its brief in the Superior Court on April 5, 1995. In addition to responding to the merits of Williams' suppression claim, the Commonwealth argued that Williams had forfeited his right to appellate review on the merits because he did not fulfill his obligation to ensure that the required record was transmitted to the Superior Court. Defense counsel filed a reply brief in the Superior Court in which he argued that he was not responsible for completing the record, and instead he claimed that the prosecution had the burden of taking necessary steps to complete the certified record.

Oral argument in the Superior Court took place on June 27, 1997, with the record still not transmitted. The Superior Court sent an Order dated July 6, 1995 that again directed the Court of Common Pleas to transmit the record. After waiting nearly five more months, the Superior Court issued an Order and Memorandum Opinion that affirmed the judgment of sentence and held that Williams' failure to provide the court

5. The record does not explain why this brief was filed beyond the due date. Nevertheless, the Superior Court did not impose sanctions on the defense for this late filing.

with a complete record precluded the Court from analyzing the merits of the appeal. Judge Cercone filed a dissenting statement in which he noted that there was no explanation in the record as to why the certified record was never transmitted to the Superior Court. He presumed that there must have been an "extraordinary breakdown in the judicial process" and concluded that Williams should not be prejudiced by those events.

Williams filed an Application for Reargument on December 12, 1995, and the Philadelphia Court of Common Pleas finally transmitted the record to the Superior Court on January 18, 1996. The Superior Court denied the Application for Reargument and this Court granted Williams' Petition for Allowance of Appeal.

## *Discussion*

The fundamental tool for appellate review is the official record of what happened at trial, and appellate Courts are limited to considering only those facts that have been duly certified in the record on appeal. *Commonwealth v. Young,* 456 Pa. 102, 115, 317 A.2d 258, 264 (1974). To ensure that the appellate courts have all necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of certified records from trial courts to appellate courts. We therefore begin our discussion with an analysis of the pertinent appellate procedural rules that govern the transmission of records.

Rule 1911 of the Pennsylvania Rules of Appellate Procedure requires appellants to order any transcripts necessary to complete the records for their appeals, and provides in pertinent part as follows:

RULE 1911. ORDER FOR TRANSCRIPT

(a) General Rule. The appellant shall order any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rule 5000.1 et seq. of the

Pennsylvania Rules of Judicial Administration (court reporters).

\* \* \*

(d) Effect of Failure to Comply. If the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal.

Pa.R.A.P. 1911. This rule makes it clear that appellants must order all transcripts necessary to decide the appeal, and that the Superior Court may take any action it deems appropriate, including dismissal of the appeal, if the appellant does not order the necessary transcripts.

This Court interpreted Rule 1911 in *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97 (1995), in which we denied a defendant review of an issue on appeal because he did not comply with the requirements of Pa.R.A.P. 1911. The defendant in *Johnson* was convicted of first degree murder, criminal conspiracy to commit murder, possession of an instrument of crime, and recklessly endangering another person and was sentenced to death. The trial court denied post-verdict motions and the defendant filed a direct appeal to this Court raising numerous issues, including an allegation that the prosecutor violated the United States Supreme Court's decision in *Batson v. Kentucky* [6] by using peremptory challenges selectively to exclude prospective black jurors from the final jury panel.

In *Johnson*, this Court noted that the record was incomplete because it contained transcripts from only two days of voir dire, during which five out of twelve jurors were selected. In addition, the record did not refer to the races of the jurors. This Court held that the defendant's *Batson* claim did not merit review because his failure to comply with Pa.R.A.P.1911 precluded appellate review.

**6.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ Although Rule 1911 requires appellants to order all transcripts necessary for their appeals, it does not place on appellants the burden to transmit the record to the Superior Court.[7] Rule 1931 of the Rules of Appellate Procedure governs the transmission of the records to the Superior Court, and provides as follows:

**Rule 1931. Transmission of the Record**

(a) **Time for transmission.** The record on appeal, including the transcript and exhibits necessary for the determination of the appeal, shall be transmitted to the appellate court within 40 days after the filing of the notice of appeal. If an appeal has been allowed or if permission to appeal has been granted, the record shall be transmitted as provided by Rule 1122 (allowance of appeal and transmission of record) or by Rule 1322 (permission to appeal and transmission of record), as the case may be. The appellate court may shorten or extend the time prescribed by this subdivision.

(b) **Duty of lower court.** After a notice of appeal has been filed the judge who entered the order appealed from shall comply with Rule 1925 (opinion in support of order), shall cause the official court reporter to comply with Rule 1922 (transcription of notes of testimony) or shall otherwise settle a statement of the evidence or proceedings as prescribed by this chapter, and shall take any other action necessary to enable the clerk to assemble and transmit the record as prescribed by this rule.

(c) **Duty of clerk to transmit the record.** *When the record is complete for purposes of the appeal, the clerk of the lower court shall transmit it to the prothonotary of the appellate court.* The clerk of the lower court shall number

---

7. We also note that Pa.R.A.P.1922 governs the transcription, certification, and filing of the notes of testimony after a notice of appeal has been filed. Rule 1923 permits the appellant to prepare a statement of the evidence or proceedings from the best available means, including his or her recollection, if a transcript is unavailable.

Pa.R.A.P.1932 permits the lower court to temporarily retain the record if a party files a praecipe to retain the record for use in preparing appellate papers. However, neither party filed a praecipe to retain the record in this case.

the documents comprising the record and shall transmit with the record a list of the documents correspondingly numbered and identified with reasonable definiteness. Documents of unusual bulk or weight and physical exhibits other than documents shall not be transmitted by the clerk unless he is directed to do so by a party or by the prothonotary of the appellate court. A party must make advance arrangements with the clerk for the transportation and receipt of exhibits of unusual bulk or weight. Transmission of the record is effected when the clerk of the lower court mails or otherwise forwards the record to the prothonotary of the appellate court. The clerk of the lower court shall indicate, by endorsement on the face of the record or otherwise, the date upon which it is transmitted to the appellate court.

**(d) Multiple appeals.** Where more than one appeal is taken from the same order, it shall be sufficient to transmit a single record, without duplication.

Pa.R.A.P.1931 (emphasis added). Rule 1931(c) clearly places the responsibility for transmitting the complete record on the clerk of the lower court, which in this case is the Clerk of Quarter Sessions of the Philadelphia Court of Common Pleas. However, the language of Rule 1931 also makes it clear that the clerk's duty to transmit the record does not arise until "the record is complete for purposes of the appeal." Pa. R.A.P.1931(c).

The Superior Court majority relied on *Commonwealth v. Osellanie,* 408 Pa.Super. 472, 597 A.2d 130 (1991), in affirming Williams' conviction. In *Osellanie,* the jury convicted the defendant of second degree murder, kidnapping, rape and the trial court sentenced him to life in prison. The defendant filed an appeal raising three issues and a petition to proceed in forma pauperis. The Superior Court affirmed the judgment of sentence and held that the appellant's failure to supply the Court with a complete record made it impossible to review of the first issue, which alleged improper remarks by the prosecutor, stating the following:

460

Osellanie has failed to supply us with a complete record for our review. Pa.R.A.P. 1921. Specifically, he has failed to provide us with a transcript of his trial proceedings. Pa.R.A.P. 1911. Although Osellanie is before this court in forma pauperis it is nonetheless the appellant's responsibility to order the transcript required and ascertain its presence in the record prior to certification for appeal. Pa. R.A.P. 1911, 1921, 1922. *Commonwealth v. Lowry,* 385 Pa.Super. 236, 560 A.2d 781 (1989); *Dorn v. Stanhope Steel, Inc.,* 368 Pa.Super. 557, 563 n. 1, 534 A.2d 798, 801 n. 1 (1987), *allocatur denied,* 518 Pa. 656, 544 A.2d 1342 (1988). *Commonwealth v. Williams,* 357 Pa.Super. 462, 516 A.2d 352 (1986). We are limited to considering only those facts that have been duly certified in the record on appeal. *Button v. Button,* 378 Pa.Super. 142, 145, 548 A.2d 316, 318 (1988), citing *Commonwealth v. Young,* 456 Pa. 102, 115, 317 A.2d 258, 264 (1974); *Barner v. Barner,* 364 Pa.Super. 1, 9, 527 A.2d 122, 126 (1987).

Inquiries as to the whereabouts of the trial transcript by this court have proved unavailing. Moreover, we are compelled to remind defense counsel that it is not the responsibility of this court to obtain a copy of the trial transcript for the purposes of reviewing the client's claims. See *Commonwealth v. Buehl,* 403 Pa.Super. 143, 588 A.2d 522 (1991). We direct counsel to Pennsylvania Rule of Appellate Procedure 1923, which provides that a statement by the appellant may be submitted to this court in the absence of a transcript. Without a trial transcript or a statement in lieu of a transcript, we are unable to conduct a proper review and analysis of Osellanie's first issue, which alleges improper remarks by the prosecutor in his closing. Therefore, we must conclude that this issue has been waived for the purpose of appellate review. *Commonwealth v. Lowry,* supra.

*Osellanie,* 408 Pa.Super. at 474, 597 A.2d at 131. The Superior Court also stated that the appellant's failure to include photographic exhibits to support his claims thwarted its review of the second issue that the photos were unduly prejudi-

cial. Nevertheless, the Superior Court addressed this issue and based its decision on the trial court's description of the photographs. In the third issue, the appellant argued that the trial judge should have granted a change of venue or venire due to pretrial publicity, but there was no transcript of voir dire to determine whether the jury pool was tainted by pretrial publicity. We agree with the Superior Court's analysis in *Osellanie* in which the court explained the appellant's responsibility to order the necessary transcripts and ascertain their presence in the record before it is certified for appeal.

Our attempts to discern whether the trial court record was "complete" here have been unavailing. The record before us does not contain this information and does not disclose why the clerk of quarter sessions did not transmit the record to the Superior Court after that Court ordered it to do so on December 20, 1994 and July 6, 1995. Thus, the critical factual question, which remains unresolved, is the following: Did the Clerk of Quarter Sessions fail to transmit the completed record to the Superior Court, or did defense counsel fail to complete the record?

The Superior Court majority's Memorandum and the Dissenting Statement disagreed about the dispositive facts. The majority believed that the defense was at fault and that it decision in *Osellanie* was dispositive. It therefore affirmed the judgment of sentence because Williams' failure to provide the Superior Court with a copy of the transcript precluded it from analyzing the trial court's decision. Judge Cercone's Dissenting Statement, on the other hand, assumes that the trial court that was responsible because it neglected or refused to transmit the record. Based on that factual scenario, Judge Cercone opined that *Osellanie* is therefore distinguishable and not controlling.

The divergent Opinions on the Superior Court panel in this case highlight the dispositive question of who is responsible for the failure to transmit the record to the Superior Court. The briefs of the parties before this Court further obscure and darken the murky waters of fault. In her brief to this Court, Williams' attorney suggests that the original record in this

case was lost, because the file eventually transmitted to the Superior Court was marked "dummy file," it was missing documents, and there are no original documents, only photocopies, in the file. Defense counsel also states that prior appellate counsel was unaware that the record had not been transmitted by the time of oral argument, and that he was "surprised" to find out that the record had not been transmitted to the Superior Court.

The Commonwealth's brief counters these arguments by attacking defense counsel's truthfulness and arguing that the assistant defender who represented Williams in the Superior Court was not "unaware" that the record was incomplete, but that he was "unwilling" to furnish the notes of testimony to the court. Brief for Appellee, p. 5. In support of its position, the Commonwealth points to defense counsel's reply brief in the Superior Court in which he argued that defense counsel had no obligation to correct the omission of the notes of testimony from the record.

■ Our review of the briefs and the entire record does not explain why the record was not transmitted to the Superior Court. We agree with the Superior Court majority where it states that Williams' judgment of sentence should be affirmed if the defense caused the delay in transmitting the record to the Superior Court. We also agree with the Superior Court dissent where it states that Williams should not be denied appellate review if the failure to transmit the record was caused by an "extraordinary breakdown in the judicial process." However, the majority and the dissent reach opposite conclusions because the reasons why the record was not transmitted are not in the record. We must therefore remand this case to the Court of Common Pleas of Philadelphia to hold and an evidentiary hearing to determine why the record was not transmitted to the Superior Court.

We direct the trial court to find the precise reason why the record was not transmitted in due course, and we expect that the court reporter and employees of the Clerk of Quarter Sessions, the District Attorney's Office, and the Defender

Association will cooperate fully with the trial court. The trial court's findings of fact should include a complete discussion of how records are completed and transmitted to the Superior Court in the normal course of business in the Philadelphia Court of Common Pleas. In addition, the trial court shall include a thorough and precise explanation of why the record was not transmitted to the Superior Court.

We emphasize that attorneys are officers of the court and should strive to ensure that the appellate process moves ahead smoothly. This Court expects that counsel for both parties in this appeal, who are adversaries in the courtroom, will work together to assist the courts of this Commonwealth with the orderly and efficient administration of justice. The adversarial process that is the cornerstone of the criminal justice system should never interfere with the appellate process. Instead of arguing and litigating the question of who was responsible for completing the record, both parties and the Court of Common Pleas should have done everything in their power to assist the Superior Court to dispose of this appeal as expeditiously as possible. Because of the lack of cooperation, an indigent defendant has been denied meaningful appellate review in the Superior Court.

The appeal to this Court could have and should have been avoided by both parties working together with the Court of Common Pleas to ensure that all necessary records were included in the record. We are perplexed about why the assistant defender who represented Williams before the Superior Court took the time and effort to file a reply brief denying responsibility for completing the record instead of simply walking to the courthouse with his file and making sure that everything was in order for his client's appeal. It is obvious to us that the time spent by the Defender Association of Philadelphia and the Philadelphia District Attorney's Office on this appeal to our Court could have been better spent doing other things. Nevertheless, we are constrained to remand this case to the Superior Court with instructions to remand the matter to the Court of Common Pleas for an evidentiary hearing.

### CONCLUSION

For the foregoing reasons, we reverse the Order of the Superior Court. We remand this case to the Superior Court with instructions to remand the case to the Court of Common Pleas for an evidentiary hearing concerning the reasons why the record was not transmitted to the Superior Court. After the evidentiary hearing, the Court of Common Pleas shall make findings of fact concerning why the record was not transmitted in due course. The Superior Court shall then reconsider its decision and take into account the trial court's findings concerning the reason that the record remained in the Court of Common Pleas.

CAPPY, J., concurs in the result.

NIGRO, J., files a dissenting opinion.

NIGRO, Justice, dissenting.

I respectfully disagree with the Majority that a remand for an evidentiary hearing is necessary. Rather, I conclude that Appellant complied with the Rules of Appellate Procedure in ordering the necessary transcripts for his appeal and thus, was not at fault for the delay in the transmission of the record. I would therefore vacate the Superior Court's order quashing Appellant's appeal.

As observed by the Majority, this appeal focuses on whether the notes of testimony from Appellant's suppression hearing were properly ordered and made a part of the record for purposes of Appellant's appeal to the Superior Court. Since the uncontradicted record indicates that Appellant had a copy of the suppression notes, I can come to no conclusion other than the notes of testimony were ordered and transcribed by the court stenographer.

As I read the applicable Rules of Appellate procedure, the ordering of those transcripts necessary to one's appeal is all that is required of an appellant to secure the availability of those transcripts for appellate review. *See* Pa. R.A.P. 1911 (an appellant must request all transcripts necessary to his

appeal). Since the transcript of the suppression notes was ordered here, I therefore agree with Appellant that he complied with his obligations under Pa. R.A.P. 1911. That is not to say, however, that Appellant's counsel fulfilled his obligations as an officer of the court. It seems clear that, as a courtesy to the court, Appellant's counsel should have provided the Superior Court with a copy of the suppression notes from his file. While this simple act of cooperation would have spared the judicial resources we are now expending, and I admonish counsel's behavior, Appellant should not be penalized for his counsel's conduct. Therefore, since I conclude from the record that Appellant complied with his obligations under the Rules of Appellate Procedure, there is no need for an evidentiary hearing.

It appears that the failure to timely transmit the record to the Superior Court was caused by a breakdown in the administration of the appellate process. As explained by the Majority, personnel in the Quarter Sessions office failed to respond, for whatever reason, to multiple orders from the Superior Court to transmit the record "forthwith." Although the Superior Court sent such directives on December 20, 1994 and July 6, 1995, the Quarter Sessions office failed to send the record until January 18, 1996, nearly two months *after* the Superior Court quashed Appellant's appeal for lack of a certified record. As stated in Judge Cercone's dissent, "the difficulty in this case is not that the appellant has failed to act, but that the trial court has failed to comply with the directives of the Superior Court to transmit the quarter sessions file and the existing transcripts." *Commonwealth v. Williams*, 449 Pa.Super. 729, 674 A.2d 322 (1995) (Cercone, J., dissenting).[1] Given

1. As the majority notes, it is unclear whether the stenographer also sent a copy of the notes of testimony to the Clerk of Quarter Sessions for the record after they were transcribed on May 29, 1992. Appellant maintains that, upon counsel's request for transcription, it is standard operating procedure for the stenographer to send the original copy to the Clerk for inclusion in the Quarter Sessions file. This practice not only would seem to be the most efficient and sensible, but more significantly, one that is in accord with the Rules of Appellate Procedure. *See* Pa. R.A.P.1922 (upon receipt of the order for transcript, the official court reporter shall have notes transcribed and shall lodge the

the waste of judicial resources involved in this case, I find cause for great concern that such a breakdown in the administrative process could occur and would expect that the personnel responsible for completing and transmitting the record will take precautions to prevent any future problems of this kind. Nonetheless, a remand for an evidentiary hearing to ascertain the genesis of the office of the Quarter Sessions' failure to timely transmit the record is collateral to this appeal once it is concluded that Appellant complied with the Appellate Rules. Thus, I disagree with the Majority's disposition of this case and would vacate the Superior Court's order quashing Appellant's appeal.

transcript with the clerk of the trial court). Appellant, however, should not be prejudiced by any administrative error that may have occurred in the preparation of his record.